Robinson v. Frost.

[Schenectady General Term, January 3, 1853.   *Willard, Hand, Cady* and *C. L. Allen*, Justices.]

---

ROBINSON & GRISWOLD *vs.* FROST, sued with Rider.

Where an action, not founded on contract, is brought against two defendants, and process is served on only one, the defendant not served is no longer a party, and is therefore a competetent witness for either party.   And if he is examined on the part of the plaintiff he may be cross-examined fully by the defendant.

The examination of a defendant not served with process, as a witness, will not authorize the examination of a plaintiff as a witness on behalf of himself and his co-plaintiffs, under § 395 of the code of 1851.

In an action for the conversion of property, an answer which denies each and every allegation in the complaint, is a denial not only of the conversion but of the plaintiff's title; and under it evidence that the plaintiff had no title to the property is admissible.

In November, 1846, an arrangement was made between the plaintiffs and one O'F., by which the latter was to procure the storage receipt of F. & R. for

Robinson v. Frost.

4000 bushels of flaxseed, and a policy of insurance on the same, and the plaintiffs were to make advances to him on such receipt, as collateral security, and O'F. was to consign to the plaintiffs, to be sold on commission, all the oil he should manufacture, except, &c. This arrangement was communicated by O'F. to F. & R. on the 2d of Dec. 1846; whereupon they made and delivered to him a receipt as follows: "Received in store from T. O'F. 4000 bushels flaxseed for Messrs. R. & G. [the plaintiffs] of, &c. F. & R." This receipt was delivered to R. & G. with a policy of insurance, and was held by them as collateral security for advances to be made to O'F. The plaintiffs made advances to O'F. to the amount of $4987,69, and O'F. paid them, by sales of oil, to an amount exceeding the advances. The payments made by O'F. were applied by R. & G. to the extinguishment of their advances; and they accepted the note of O'F. at four months for the balance due them, including a previous debt of $642,76, and held the same, and received payments on it. *Held*, 1. That the storage receipt being given as collateral security for advances *to be made*, and not for an antecedent debt, and the payments having been applied in payment of the advances, the flaxseed could not be held by the plaintiffs by virtue of a lien in respect to the debt previously owing to them by O'F.

2. That the plaintiffs acquired no lien on the flaxseed for antecedent debts; and that their lien for advances actually made was discharged by the reimbursement of those advances by O'F.

3. That F. & R. stood in the character of sureties for O'F. for the advances to be made by the plaintiffs, to the extent of the value of 4000 bushels of flaxseed; and that the payment of those advances by O'F. released the sureties from all liability.

4. That the intention of the parties being to secure the plaintiffs for future advances, the attempt of the latter to make the transaction cover an antecedent debt of O'F. was a fraud upon F. & R.

5. That the receipt was not an instrument within the statute of frauds, but was in the nature of a bill of lading of the flaxseed, and could be explained by parol evidence of independent and collateral facts showing to whom the flaxseed belonged, and the object of the deposit

The liability of a surety can never be extended beyond the terms of the agreement.

THIS action was commenced in August, 1850, and the pleadings were framed under the code of 1849. It was an action for the alledged conversion of a large quantity of flaxseed, of the value of $600, the property of the plaintiffs. The process was served only on Frost, and not on Rider. Frost alone appeared and put in an answer, containing, with respect to each allegation of the complaint a general denial thereof as was allowed by § 149 of the code of 1849. The cause was referred to a sole

referee in July, 1851. The referee, on the 26th February, 1852, reported that the defendant had not wrongfully converted to his own use the property of the plaintiff. The referee found certain facts and conclusions of law as follows: "That one Timothy O'Flanagan, a manufacturer of linseed oil in Weybridge, near Middlebury, Vermont, on the 5th day of November, 1846, opened an account with the plaintiffs, who are and then were copartners carrying on the business of druggists and dealers in paints and oils, in the city of Troy; that previous to the 2d day of December, 1846, the plaintiffs had an account against O'Flanagan amounting to $602,18, consisting of their acceptance of his draft of $500 at one day's sight; merchandise at six months, $101,80, and charges on ten barrels oil, 38 cents; and that the plaintiffs had on commission a quantity of linseed oil, to be sold for said O'Flanagan, the amount of which was not proved; that on the 2d day of December, 1846, the defendant Joseph Frost and Darwin Rider were copartners, residing and doing business at Bridport, in Vermont, and a part of their business was storing and forwarding goods; that a few days previous to said 2d day of December, 1846, an arrangement was made between the plaintiffs and O'Flanagan; that O'Flanagan should procure the storage receipt of Frost & Rider for 4000 bushels of flaxseed, and a policy of insurance on the same, and that the plaintiffs would make advances to him on such receipt as collateral security, and that O'Flanagan would consign to the plaintiffs, to be sold on commission, all the oil he should manufacture, except so much as would be required to supply his home customers; that O'Flanagan communicated this arrangement in whole or in part to Frost & Rider on the said 2d day of December, 1846, upon which they made and delivered to him a receipt in the words and figures following: "Received in store from T. O'Flanagan, 4000 bushels flaxseed, for Messrs. Robinson & Griswold, of Troy, N. Y.

Bridport, Dec. 2, 1846. FROST & RIDER."
That the receipt was delivered to the plaintiffs with a policy of insurance, soon after it was executed by Frost & Rider, and held by them as collateral security for advances made to O'Flanagan; that the plaintiffs have advanced to O'Flanagan, by paying and

Robinson v. Frost.

accepting his drafts, sales of goods, &c. including interest, the sum of $4987,69, the particulars of which are contained in schedule B. accompanying this report; that O'Flanagan has paid to the plaintiffs, by sales of oil, &c. the sum of $4987,69, after deducting the charges, the particulars of which are contained in schedule C. accompanying this report; that the plaintiffs were the successors in business of Messrs. Fassett & Co., of which firm they were partners; that O'Flanagan owed a balance of account to Fasset & Co., for which he gave to the plaintiffs his note for $642,76, dated 13th of November, 1846, at one day; that the plaintiffs stated their account with O'Flanagan on the 30th day of January, 1847, without noticing the note for $642,76, by which account there was found due to the plaintiffs, including interest, $3969,19 : that the plaintiffs further stated their account with O'Flanagan, on the 1st day of Feb. 1848, without noticing the said note, by which account there was found due to the plaintiffs, including interest, $433,57 ; that the plaintiffs further stated their account with O'Flanagan, on the 31st day of January, 1849, by which account there was found due to the plaintiffs, including interest, $659,37, in which last mentioned account are contained the following items of debt :

'1849, January 31. To am't of your 1 day note, dated 13th November, 1846, . . . . . . . . . $642 76
Interest on do. to date, . . . . . . . . . . 104 25
Am't of your note at Union Bank, N. Y., 3 months, from 22d August, 1848, . . . . . . . . . 400 00

$1147 01'

And the following items credited : '1848, August 24. To your note at Union Bank, 22d August, 3 months, 1848, $400,00.'

That the note for $400 was sent by O'Flanagan to the plaintiffs on their request that he would send his note with the indorsement of Frost & Rider; that O'Flanagan gave his note to the plaintiffs on or about the 5th February, 1849, for $675,13, being the balance of the last account rendered, with interest to 4 months' time given on it, which note was given by request of the plaintiffs to balance the books; that since that note was

given, O'Flanagan has paid $233,91 on it, and has purchased of plaintiffs merchandise to the amount of $93,16, which is included in schedule B; that Frost & Rider had disposed of the 4000 bushels of flaxseed by delivery, from time to time, to O'Flanagan. . The referee decides that the plaintiffs held the receipt for advances to be made to the full value of the flaxseed, found to be worth $5000, and that Frost & Rider stand in the character of sureties for such."

The referee decided that the plaintiffs had no claim against the defendant, nor against Frost & Rider, on the said receipt as collateral security for the note of $642,76: 1st. Because the storage receipt was given as collateral security for advances to be made, and not for an antecedent debt; 2d. Because the plaintiffs had applied the payments made by O'Flanagan, to the extinguishment of such advances, to an amount equal to the whole value of the flaxseed; 3d. Because the plaintiffs accepted the individual note of O'Flanagan, at four months, for the balance due them, including the note of $642,76. and held the same, and received payment on it.

A case was made, according to the course and practice of the court, and the plaintiffs appealed to this court from the judgment rendered against them on the report.

*H. Edson,* for the appellants.

*Kellogg & Hale,* for the defendant.

*By the Court,* WILLARD, P. J.   I. It is urged by the plaintiff that the referee erred in admitting Darwin Rider, one of the defendants, to testify on the part of his co-defendant as to matters on which the plaintiff had not examined him. As the action was not upon a contract, and the process was only served upon one of the defendants, Frost, the plaintiffs, by § 136 of the code of 1849, sub. 2, were permitted to proceed against the defendant served, in the same manner as if such defendant was the only party proceeded against. By going on with the action, without bringing in the defendant Rider, the plaintiff elected to

sever the action. Rider was no longer a party, and could not be affected by the judgment. He was, therefore, a competent witness for either party, and having been examined on the part of the plaintiff, no reason is perceived why he could not be cross-examined fully on the part of the defendant Frost, against whom the plaintiffs had elected to proceed.

II. It is insisted that the referee erred in excluding Daniel Robinson, one of the plaintiffs, who was offered to be examined in their behalf. He was so offered under § 395 of the code of 1851, upon the alledged ground that Rider, one of the defendants, was examined on the part of the defendants. But it has been shown that Rider was not a party, and was a competent witness; and that he was examined not as a party, but as a witness. There was therefore no foundation for the claim to examine Robinson, and he was rightly excluded by the referee.

III. It is urged by the plaintiffs that the whole defense was inadmissible, under the answer. The 128th section of the code of 1848, required that the answer should contain a *specific* denial of each allegation of the complaint controverted by the defendant, and this was also required by the 149th section of the code of 1851. But the code of 1849, under which these pleadings were framed, like the code of 1852, required only a *general* denial. But there is no provision in either code as to what evidence is admissible under any issue. We are thus left, with respect to this branch of practice, to the common law, and to such analogies as are deducible from it. Under the former action of trover, which the present action strongly resembles, every thing was admissible in evidence under the general issue, except a release, and the statute of limitations. (1 *Chitty's Pl.* 490.) And special pleading in that action was discountenanced by the court, as leading to unnecessary expense and troublesome prolixity. (10 *John.* 291.) Under the English new rules, the plea of not guilty in trover operates only as a denial of the conversion, but not as a denial of the plaintiff's title. (3 *Steph. N. P.* 2698.) But the answer in this case denies not only the conversion but the plaintiffs' title. It denies each and every allegation in the complaint. And, moreover, we have no statute

declaring what evidence is admissible under the issue. The evidence was admissible under the general issue, according to the former practice, and I think is equally so under the code of 1849 and 1852. If true, it showed that the plaintiffs had no title to the flaxseed.

IV. The more important objection to the evidence was that it tended to contradict, vary or explain the receipt, which it was insisted was a contract between the plaintiffs and the defendants. The facts as found by the referee are, that prior to the giving of the receipt in question, an arrangement was made between the plaintiffs and one O'Flanagan, by which the latter was to procure the storage receipt of Frost & Rider, (the defendants,) for 4000 bushels flaxseed, and a policy of insurance on the same, and that the plaintiffs would make advances to him on such receipt as collateral security, and that O'Flanagan would consign to the plaintiffs, to be sold on commission, all the oil he should manufacture, except so much as should be necessary to supply his home customers. This arrangement was, on the 2d December, 1846, communicated by O'Flanagan to Frost & Rider, upon which they made and delivered to him a receipt in the words and figures following : " Received in store from T. O'Flanagan, four thousand bushels flaxseed for Messrs. Robinson & Griswold, of Troy, N. Y. Bridport, Dec. 2, 1846. Frost & Rider." This receipt was delivered to the plaintiffs, with a policy of insurance, soon after it was executed by Frost & Rider, and was held by the plaintiffs as collateral security for advances made to O'Flanagan. The plaintiffs made advances to O'Flanagan to the amount of $4987,69, and O'Flanagan paid them by sales of oil to the amount of $4989,67, exceeding by a small sum the advances. Thus, according to the finding of the referee, the whole amount of the advances were reimbursed by the avails of the flaxseed, and the object of the agreement was fulfilled. But the plaintiffs held a note against O'Flanagan, dated 13th November, 1846, for $642,76, payable at one day after date, for an antecedent debt, and they claim to apply so much of the avails of O'Flanagan's payments to the note as will extinguish it, and held the defendants liable for the same amount. This

Robinson *v.* Frost.

the referee refused to allow them to do, because the storage receipt was given as collateral security for advances *to be made*, and not for an antecedent debt; and because the plaintiffs applied the payments made by O'Flanagan to the extinguishment of such advances, to an amount equal to the whole amount of the flaxseed; and because the plaintiffs subsequently accepted the individual note of O'Flanagan, at four months, for the balance due them, including the note of $642,76, and held the same and received payments on it.

The objection to the evidence was that it was by parol, and tended to contradict the written receipt of the 2d December, 1846. The general principle that parol evidence cannot be received to contradict a written agreement, is not denied. (*See* 1 *Phil. Ev.* 561.) This rule is applied the most strictly with regard to those agreements which are required by the statute of frauds to be in writing. (*Id.* 559.) Such evidence would defeat the statute, and introduce that uncertainty which it was the object of the legislature to suppress.

The receipt in this case was not an instrument within the statute of frauds. The evidence was not inconsistent with it, nor in any respect contradictory to it. The receipt does not show to whom the flaxseed belonged, nor the object of the deposit. The evidence offered and received was of independent and collateral facts, by which that object was shown. The plaintiffs could have no title to the flaxseed, without payment. If their advances to O'Flanagan were reimbursed, as the referee found as matter of fact they were, their claim or lien upon the flaxseed was at an end. Frost & Rider stood in the character of sureties for O'Flanagan, for the advances to be made by the plaintiffs to him, to the extent of the value of four thousand bushels of flaxseed. The payment of those advances by O'Flanagan necessarily released the sureties from all liability. The plaintiffs having no longer any lien upon the flaxseed, could neither maintain trover nor any other action for it. The defense was properly admissible under an answer denying generally the plaintiffs' property in the subject of the action.

The liability of a surety can never be extended beyond the

terms of the agreement. The intention of the parties was to secure the plaintiffs for future advances. The attempt of the latter to make the transaction cover an antecedent debt of O'Flanagan, was a fraud upon the defendant.

The defendants were storing and forwarding merchants residing in Vermont, and the plaintiffs were merchants residing in the city of Troy. The receipt of the defendants was in the nature of a bill of lading of the flaxseed. Such instrument can always be explained by parol. It may be shown by parol to have been intended as evidence of an absolute sale, a trust, a mortgage, a lien, or a mere agency. (*Grosvenor* v. *Philips*, 2 *Hill*, 152, *per Cowen, J. The Bank of Rochester* v. *Jones*, 4 *Comst.* 500, 501, *per Paige, delivering opinion of the court. Bryans* v. *Nix*, 4 *M. & W.* 791.) O'Flanagan was the general owner of the flaxseed, and may be treated as the consignor. The plaintiffs were the consignees as security for advances. They acquired no lien on the flaxseed for antecedent accounts, and their lien for advances actually made was discharged by the reimbursement of those advances by O'Flanagan. (*See Bank of Rochester* v. *Jones*, 4 *Comst.* 497, 501.) If the transaction be viewed as a pledge or a mortgage of the flaxseed, as security for the advances, the result is the same. A parol mortgage is good enough between the parties. A performance of the condition reinvests the title in the mortgagor.

The foregoing remarks dispose of all the exceptions in this case.

There is no error in the report of the referee, and the judgment must be affirmed.

[Schenectady General Term, January 3, 1853.   *Willard, Hand, Cady* and *C. L. Allen*, Justices.