Howard, J.
The appellee was a freight brakeman in the service of appellant, and brought this action to recover damages for injury alleged to have been caused by negligence of appellant in the use of a, defective coupling link.
The particulars of the accident are stated in appellant’s brief as follows:
“The appellant had a freight train bound from Bloomington to New Albany, Indiana, on July 27, 1894. That train had received an order to meet a north bound train at Salem, Indiana. At this place there was a siding, and' the freight train in question headed in upon this siding, in order to leave the main track unobstructed for the passage of the north bound train. On this siding there were idle cars, which it *266 was necessary to move farther in on the siding, in order to let the train in far enough to clear the main track. The engine and train moved up near to these other cars, when it was necessary for the appellee, as a part of his duties, to stand on the front of the pilot of the engine and hold up what is known as a shackle bar, which is an iron coupling appliance about three or' four inches in diameter, and four or five feet in length, extending over the pilot, and when used it was necessary' for appellee to raise the lower end of it up to a point level with the drawbar on the car in front, in order to couple the engine thereto. While the appellee was on the pilot holding up this shackle bar to make such coupling, the engine and train moved forward toward the cars in front to enable appellee to make the coupling. The train was a heavy one and was moving up grade, and when at or near to said standing cars, the train broke in two between the second and third cars next back of the engine, and the engine suddenly shot forward and threw appellee backward, and he was caught by the shackle bar and his arm was broken and badly mashed.”
After the accident it was discovered, by an inspection made by the trainmen, that-the defective coupling link, the parting of which had caused the train to break in two and so brought about appellee’s injury, had an old rusted flaw and “was cracked and broken about one-third of the way into,” as the verdict states it.
The sufficiency of the complaint and the correctness of the court’s ruling in sustaining a demurrer to the second paragraph of answer, and in overruling the motion for a new trial, are called in question.
The part of the complaint which it is claimed shows contributory negligence on the part of the appellee is as follows:
*267 “That defendant was using on said train a defective coupling link which was cracked and worn and partly broken, and was being used to couple the first car behind the engine to the one immediately behind it; that said defect in said link, and the said worn, cracked and broken place therein, was patent and open to the inspection of defendant if an examination of the same had been made, and defendant knew or might have known of said defective, worn, cracked and broken condition of said link; that said link was unsafe and unfit for use on said train, and defendant knew this, or might by due inspection have known the same, but carelessly and negligently used and continued to use, and caused to be used, said coupling link on said freight train; that plaintiff knew nothing of said defective, cracked, worn and broken condition of said link, but was wholly ignorant of the same, and could not have known of the same unless he had made a careful examination and inspection of the same for the purpose of ascertaining its condition, which he did not do,”
To contend that because it is alleged that the defect in the coupling was “patent and open to the inspection of the defendant if an examination of the same had been made,” it therefore follows that the defect was one which was obvious “to ordinary careful observation” and consequently one which" appellee should have seen and avoided, is to mistake the plain meaning of the language of the pleader. The words used and their context plainly indicate that the defect was one which could have been easily discovered on a careful examination by appellant’s inspectors. There is nothing in the complaint to show that appellee had anything to do with the coupling link. Had he coupled the cars between which the link was used, and thus handled the defective appliance and so had op *268 portunity to observe it, there might be some propriety in holding'him accountable for a knowledge of its condition. Employes are rightly held chargeable with knowledge of the condition of the tools and parts of machinery and appliances which they use or with which they come in contact. In this case, for example, had there been an open and obvious defect in the “shackle bar” which appellee was holding in his hands at the time he was hurt, and had he been injured by reason of such defect, then the authorities cited, by counsel might be in point. It is, as counsel say, citing Wabash, etc., R. W. Co. v. Morgan, 132 Ind. 430, obvious defects and such as could be discovered by reasonable observation that are perils of the service and as such assumed by the employe.
It is true, as said in Cincinnati, etc., R. R. Co. v. McMullen, 117 Ind. 439, that: “An employe is required to observe and avoid all known or obvious perils, even though they may arise from defective machinery and appliances; but he is not bound to search for defects, or make a critical inspection of the appliances which are provided for his use. These are duties of the employer, who is required, not only to furnish reasonably safe and suitable tools and machinery, but to exercise such a continuing supervision over them, by such reasonably careful and skillful inspection and repair, as will keep the implements which employes are required to use in such a condition as not unnecessarily to expose them to unknown and extraordinary hazards.”
So, also, it was said in Louisville, etc., R. W. Co. v. Buck, Admr., 116 Ind. 566, Mitchell, J., speaking for the court in both cases: “While the employer may expect that an employe will be vigilant to observe, and that he will be on the alert to avoid all known and obvious perils, even though they may arise from defective *269 tools and machinery, * * * * yet the latter is not bound to search for defects or inspect the appliances furnished him to see whether or not there are latent imperfections in or about them which render their use more hazardous. These are duties of the master, and unless the defects are such as to be obvious to any one giving attention to the duties of the occasion, the employe has a right to assume that the employer has performed his duty in respect to the implements and machinery furnished. Bradbury v. Goodwin, 108 Ind. 286; Little Rock, etc., R. W. Co. v. Leverett, 48 Ark. 333; Fort Wayne, etc., R. R. Co. v. Gildersleeve, 33 Mich. 133; Hughes v. Winona, etc., R. R. Co., 27 Minn. 137; Wood, Master and Servant, section 376.” See, also, Chicago, etc., R. R. Co. v. Fry, 131 Ind. 319.
In the case before us, did it appear that the appellee had coupled the two cars which had broken apart and .had used the broken link for that purpose, and were the break such as to be open and obvious to ordinary careful observation, then he might well be held chargeable with knowledge of the defect. But having no occasion to use the link, and knowing nothing of its defective condition, he was “not bound to search for defects.”
Even if the link were an appliance which appellee had used he would not be required to inspect it to see whether or not there were latent defects in or about it, still less when he had no occasion to use it or to know anything of its condition. He had a right to assume that his employer had furnished an engine and cars the appliances of which were in a reasonably safe condition. He was not required to make “a careful examination and inspection for the purpose” of seeing whether this duty had been performed. In the case last above cited, it was shown “that the defect in the machinery was unknown” to the injured employe, *270 “that it was not obvious, and could not have been discovered except by stooping down and looking' under the car.” This, the court, in effect, held he was not required to do, saying that the facts showed that he “was not guilty of contributory negligence in going in between the cars to uncouple them, notwithstanding the defective condition of the appliances.” The defect was one that might readily have been discovered by proper inspection, but this the employer, and not the employe, was bound to make. In the case at bar, the appellee was not even using the defective link, and had not used it, but was using a totally different appliance, and in a different part of the train, and knew nothing of the defect which caused his hurt. We have no doubt that the complaint was sufficient.
It is next contended that the court erred in sustaining the demurrer to the second paragraph of-the answer. We have carefully read this paragraph of answer, and are satisfied that appellant suffered no harm by the ruling complained of. It is, in effect, an argumentative denial of certain of the allegations of the complaint, setting out also certain averments that might be supported by the introduction in evidence of the rules of the company. These rules might, however, have been quite as well introduced under the general denial; and, as a matter of,fact, all the rules relating to brakemen were introduced in evidence. Other reasons are urged by appellee’s counsel in support of the court’s ruling, but this we think sufficient.
In the special verdict returned by the jury the facts are found substantially as alleged in the complaint. It is found that the two cars between which was the defective link were, by order of appellant, taken into the train, so coupled together, between eleven and twelve o’clock at night, at Bedford, where the train stopped just long enough to put the cars into the train, *271 giving appellee neither time nor opportunity to inspect the cars. It therefore appears that appellee did not see or use the defective coupling link, the two cars being coupled together before the arrival of his train, and that he had neither time nor opportunity to examine or inspect the link, even if it were his duty to make such inspection. Moreover, even if but a single car had been received at Bedford and coupled into the train by appellee, still he could not be held chargeable with a knowledge of any defects but those readily discernible on the brief examination, which he could make. “It is evident,” as said by Judge Elliott, in Matchett v. Cincinnati, etc., R. W. Co., 132 Ind. 334, “that a brakeman receiving a car into a train out on the road cannot be held to the same degree of care as a regular inspector, or a man in a shop properly supplied with tools.”
The verdict further shows that the appellant negligently used and caused to be used the defective link to couple the two cars in question; and knew or might by inspection have known of its defective condition. This finding is directly supported by the evidence, which shows that the company, at thal time, had a train inspector at Bedford, the point where the two cars were taken in.
Rule 178, read in evidence, and which counsel think shows that the verdict was not supported by the evidence, has to do altogether with care required in coupling cars. But appellee was not hurt in coupling cars, nor in consequence of any coupling which he had done, but by reason of a defective link with which he had nothing and could have nothing to do.
The verdict, as we think, supports the judgment and is itself supported by the evidence.'
Some contentions made by appellant seem to be *272 based upon a misapprehension of the facts disclosed in the record. Objection, for example, is made to the exclusion of certain evidence sought to be elicited from Dr. Murphy, one of appellant’s witnesses. In the course of his re-examination this witness was asked by appellant’s counsel what was said in a certain named medical authority as to the difference between necrosis and. caries of the bone, with a view to determine which of these diseases was indicated by the discharges from appellee’s wound; and counsel cite authority to show that on cross-examination such questions are proper. There is no doubt that in order to test an expert’s knowledge, it is proper, on cross-examination, to read statements from writers of repute, who have treated of the subject concerning which the expert has testified, and ask him questions touching the views advanced by such text writers. Hess v. Lowry, 122 Ind. 225. The trouble with áppellant’s contention is that the question here asked was not on cross-examination, and the evidence thus sought was but of a self-serving character.
Judgment affirmed.