## EMPLOYE INJURED THROUGH CARELESSNESS OF FOREMAN.

Common Pleas Court of Franklin County.

DEMOSTHENES BAKAS V. THE CASPARIS STONE COMPANY.

Decided, February, 1913.

*Pleading—General Denial and Allegations Inconsistent Therewith— Averments of Assumption of Risk and Contributory Negligence and their Effect—Design of the Code as to Certainty and Definiteness—When a General Denial is Proper—Variance.*

1. A denial of each and every allegation of the petition not herein specifically admitted to be true, pleaded with defenses of new matter inconsistent with a complete denial of the essence or gist of a cause, as well as with evasive and uncertain new facts, is improper and not authorized by the code.

2. A plea of assumption of risk, admits that some servant has been guilty of neglect tending to cause the injury.

3. A claim of contributory negligence implies some negligence on the part of defendant, and is inconsistent with a general or qualified denial of no negligence.

4. A denial of every allegation not specifically admitted to be true, is an attempt to deny the negligence charged against defendant, and should not for this reason be given effect.

5. The design of the code for certainty and definiteness is defeated by such a mode of pleading.

6. The general denial in the technique of procedure has a definite and certain meaning and is proper only when the whole gist of a cause is assailed.

7. New matter and defense acquire equal definite and certain meaning, and in logic and by natural inference admit all essential facts required to constitute plaintiff's cause. It expressly or impliedly admits the averments of the petition, and alleges facts that destroy their effect or defeat them.

8. Where a risk is an ordinary or an obvious one, and the facts showing injury clearly warrant the inference that plaintiff had, or ought, in the exercise of due care, to have knowledge of the peril or danger, he must in such case aver facts which will remove the case from the rule charging the servant with the assumption of risks.

9. In such case the defendant may show assumption of risk under a general denial without pleading it.

10. A plea that certain negligent acts were committed by plaintiff, which said negligence of plaintiff was a direct and proximate cause of any injuries which he sustained, while it has received some recognition as something more than a denial that plaintiff was without fault and constitutes an averment that plaintiffs own negligence was the sole cause of his injury, is at variance with the logic and reason of pleading, setting up nothing that may not be shown under a general denial.

11. The court in such case on motion to strike it out, may *sua sponte* order that it be made definite and certain by stating whether the alleged negligent acts of plaintiff were a contributory cause with the negligence complained of and charged in the petition against defendant.

*John H. Summers, Robert S. Alcorn* and *Albert D. Alcorn,* for plaintiff.

*Fred M. McSweeney,* for defendant.

KINKEAD, J.

Plaintiff alleges that the defendant was operating a stone quarry at Lexington, South Carolina; that on March 7, 1912, plaintiff was in the employ of defendant at that point working in the quarry as a common laborer; that the gang of men with whom plaintiff worked was under the direct supervision and control of a foreman designated by defendant to have charge of the work; that plaintiff was obliged to, and did conform and obey and by his contract of employment was required to obey, all instructions and orders of the foreman; that on the date named the plaintiff while acting under the direct order of the foreman, was injured *without any negligence on his part,* by the act of the foreman; that while plaintiff was quarrying stone under the direct orders of the foreman, or superior, *the latter,* without any warning of any kind, negligently and carelessly rolled a large stone from a higher level in the quarry down upon the plaintiff, crushing the great toe, etc.

The plaintiff did not and could not have known, in the exercise of ordinary care that defendant's foreman, plaintiff's superior, was going to perform any labor on said higher level so as

to endanger him while engaged in the performance of his duties.

Plaintiff avers also that defendant was obliged to furnish him a safe place to work and that it failed to perform its duty in this particular by rolling or causing to be rolled a stone from a higher level in said quarry down upon plaintiff.

The defendant for its answer admits that it is a corporation under the laws of the state of Ohio; admits that it maintains and operates a stone quarry at Lexington, in Lexington county, South Carolina; admits that at the time mentioned in plaintiff's petition, it had there in its employ numerous workmen including the plaintiff; admits that on or about the seventh day of March, nineteen hundred and twelve, the plaintiff received some injury, but not to the extent alleged in the petition; but denies each and every allegation of the petition not herein specifically admitted to be true.

For a second defense, the defendant says that said plaintiff entered into its employ to serve the defendant within said state of South Carolina, and with reference to the laws of that state. And it further says that under the laws of said state of South Carolina, where said plaintiff was acting as an employe of the defendant, the plaintiff and all other employes named in plaintiff's petition engaged in the quarrying of stone in said quarry are held to be fellow employes, and for the negligence of either, resulting in injury to the other, the common master, to-wit, the defendant, is held not to be liable to the other.

For a third defense the defendant says that the plaintiff entered into its employ within the state of South Carolina and was employed to serve the defendant within said state of South Carolina, and with reference to the laws of that state.

It says further that under the laws of said state of South Carolina, where said plaintiff was acting as an employe of the defendant, at and before the time of the accident alleged in the petition, the plaintiff knew or by the exercise of ordinary care would have known, exactly the position of said stone in said quarry, and the exact condition thereof, and, therefore, if said stone was improperly laid or rolled on to the plaintiff, the plaintiff, under the laws aforesaid, assumed whatever risk resulted therefrom.

For a fourth defense the defendant says that the plaintiff entered into its employ within the state of South Carolina, and was employed to serve the defendant within the said state of South Carolina, and with reference to the laws of that state.

It says further that under the laws of said state of South Carolina, where the plaintiff was acting as an employe of the defendant, at and about the time of the happening of the accident referred to in the petition, the plaintiff himself was guilty of negligence in the following particulars: the plaintiff knew, or by the exercise of ordinary care ought to have known, the exact position of the stone referred to in the petition, and whatsoever dangers were incident thereto, and, notwithstanding the aforesaid, the plaintiff negligently took an iron bar, and placing himself in close proximity to the stone described in the petition, with said bar pried or loosened a small stone, causing the larger or upper stone to roll down upon the plaintiff, when he knew or ought to have known the condition and dangers thereof, and said negligence of the plaintiff was a direct and proximate cause of any injuries which the plaintiff sustained, and for which this defendant is not liable under the laws of South Carolina.

Plaintiff moves to strike out of the answer the second defense irrelevant because it may be raised under the denial. It also moves to strike out the fourth defense for the same reason. An alternative form of motion is made to require defendant to set forth specifically the law of South Carolina.

The first question to be decided is whether effect shall be given the form of denial in this case.

## Is the Form of Denial Contained in the Pleading Authorized?

This form of denial, which is not authorized, pleaded as it so often is with defenses of new matter inconsistent with an attitude of complete denial of the *essence* or *gist* of the cause. as well as with evasive and uncertain *new facts,* has become so common, and is so apparently improper, that I am impelled to express the view that our lack of attention to duty to the true science of procedure is fostering an improper practice akin to the evils which the purpose of the code was to correct.

I lay down the proposition first that the form of denial used in this pleading is not authorized by the code, and should no longer be tolerated in practice.

It is not conducive to certainty and definitions of issues, but leads to uncertainty, confusion, evasiveness and inconsistency. This may readily be demonstrated by reference to the numerous cases in trial courts, by reversals in reviewing courts, and by the several decisions rendered by reviewing courts to which reference is herein made. I am inclined to praise our system by stating that the fundamentals of the English system of law and equity, shorn of its fictions and formalities, as it is found merged in the reformed code of civil procedure is admirably calculated to divest the subject of a cause for adjudication of all extrinsic and unnecessary matter and narrow down the pleadings to a single point. It is a logical process, the object of which is truth. It should be the aim of every person entrusted with the duty and function of using it for practical purposes, not to misuse it, and to disdain to use it for any purpose other than its true one. Being an instrument of truth and justice, its use should be consistent with those purposes.

The reformed system constructed by the code is perfect in its scientific character, far surpassing in its aims towards certainty, by its general denial, the loose notions, introduced by common law courts in relation to the function of the *general issue* and it is at the same time practical in the highest degree. To carry out the purpose it is clearly the duty of the courts to insist upon the simple methods which the code so clearly prescribes, concerning which, indeed, it does not leave the slightest doubt or uncertainty. *Pomeroy's Code Rem.*, Section 521.

The Code, Section 11314, provides that the answer shall contain:

1. A *general* or specific denial of each material allegation of the petition controverted by the defendant.

2. A statement of *new matter* constituting a *defense*, etc.

Only these, and nothing more nor nothing less, are authorized. We have in this answer special admissions, explanations, affirmative statements purporting to plead a relation of fellow-serv-

ant, instead of that of superior servant as claimed by plaintiff, an assumption of risk, a statement which is claimed by some to constitute a plea of contributory negligence, and with it all this form of denial, viz.:

"But denies each and every allegation of the petition not herein specifically admitted to be true."

An assumption of a risk is to admit that some servant of defendant had been guilty of neglect which caused the injury, but by reason of the contract of the servant, and his conduct while in the employ, he waived his right to complain, hence there is no actionable neglect.

A claim of contributory negligence implies some negligence by defendant, and is inconsistent with a general and qualified denial of no negligence (*Traction Co.* v. *Stephens,* 75 O. S., 171; *Traction Co.* v. *Forrest,* 73 O. S., 1; *Latham* v. *Railway,* 8 N.P. [N.S.], 185). A denial of every allegation not specifically admitted to be true, is an attempt to deny the negligence charged against defendant, and we have been giving effect to this form of denial.

So we have here a qualified general denial, the plaintiff on the motion claiming that assumption of risk, and alleged negligent acts of plaintiff as a proximate cause of his injury in the fourth defense, may both be shown under the general denial, because the fourth defense is not a plea of contributory negilgence. The confusion is further illustrated by the form of denial of each and every allegation not specifically admitted, qualified or denied, with a plea of contributory negligence as in *Clark* v. *Dillon,* 97 N. Y., 371, wherein it was held that such form of denial does not constitute a denial of the negligence which is qualified by the plea of contributory negligence.

If these so-called defenses or claims are permissible under a general denial, we are then called upon to determine whether a *general denial* authorized by the code has been pleaded. If so, we have also a question of general and argumentative denial where the pleader, not being satisfied with his general denial, considers it necessary to add in separate divisions of the answer a further statement of the very facts which constitute his defense,

a mode of pleading faulty in the extreme, without a single reason in its favor, nor any excuse for its existence, overloading the record with superfluous matter, producing nothing but confusion and uncertainty, which is a species of answer in direct conflict with the plainest principles and the express requirements of the code. *Pomeroy Code Rem.*, Sections 521-524.

The claim upon the motion to strike out these alleged defenses forces upon us the consideration whether the form of denial contained in the answer is authorized by the code.

The question is whether we shall continue giving sanction to such form of denial, which not infrequently tends to uncertainty and inconsistency.

The plain language of the code requires either a general denial, or specific denials, or defenses in confession and avoidance. The general denial is plainly intended to be an answer to the entire petition, to negative all its averments. *Pomeroy Code Rem.*, Section 525.

But notwithstanding the plain and necessary inference from the language as well as the intent of the code, a number of decisions have given "approval to this most slovenly manner of stating the defense of denial." I am glad to be able to express my disapproval of it in the language just quoted from such an author as *Pomeroy Code Rem.*, Section 527.

The decisions referred to are to the effect that a denial of each and every allegation of the complaint not hereinbefore admitted or controverted is a good general denial, if what has been before admitted or controverted is clearly specified. *Griffin* v. *Railroad*, 101 N. Y., 348; *Nicolaus* v. *Railway*, 90 Ia., 85; *Faulkner* v. *Mining Co.*, 23 Utah, 437; *Unger* v. *Mellinger*, 37 Ind. App., 639; 117 Am. St., 348; *Railway* v. *Tracy*, 14 C. C. A., 190; *Railroad* v. *Orr*, 84 Ind., 50; *Althouse* v. *Jamestown*, 91 Wis., 46; *Childers* v. *Bank*, 147 Ind., 430; *Mattoon* v. *R. R. Co.*, 6 S. D., 301; *Nix* v. *Gilmer*, 5 Okla., 740; *Bessemer, etc., Co.* v. *Woolay*, 32 Colo., 437, (105 Am. St., 91). See *Pomeroy's Code Rem.*, Section 527.

"The design of the codes (for certainty, precision and definiteness) would, however, be utterly defeated if the vicious style

of defense thus described should become common; and the courts, it is submitted, ought to have pronounced most emphatically against it when it first made its appearance." *Pomeroy Code Rem.*, Section 524.

But the courts have not followed Mr. Pomeroy's suggestion, and the form has apparently become part of the settled practice. To give effect to such form as a *general denial* is to ascribe to it a different interpretation than what has always been given it as a complete denial, and ignores not only the logical but actual admission of the *defense* of *new matter*, as well as the rule forbidding inconsistent positions and defenses. It gives rise to apparent issues which are confusing, illogical and unwarranted, presenting difficulties which can only be avoided by enforcing the spirit and letter of the code, holding parties to the only authorized pleas of the code. It affords opportunity for evading the force of logical and actual admission by the plea of defense of new matter of the facts alleged by plaintiff.

Mr. Pomeroy many years ago made the following statement concerning the vice of the practice we are now considering:

"No topic, he stated, connected with the whole subject of pleading is, I think, more important than the question (of the object and functions of the general denial). Undoubtedly, much of the confusion, redundancy, and unscientific character of pleadings under the codes is the result of ignorance or uncertainty as to the power of the general denial to admit defenses upon which the defendant relies."

There is nothing more helpful to one desiring to progress in the science of law than to journey back occasionally to old landmarks.

*McKring* v. *Bull*, 16 N. Y., 297, is a landmark on the subject of general denial. The learned Justice Selden rendering the opinion traces the history of the old English practice under the rules of Hilary Term during the reign of William IV, pointing out the fact that the primary purpose of those old rules as well as of our code system was "to prevent parties from surprising each other by proof of what their pleadings give no notice. The old Hilary rules proving ineffective because of persistent loose

practice others· were adopted during Victoria's reign to remedy defects. In construing the plain provisions of the code, Mr. Justice Selden, to prevent loose practice of his day, held that the code provision was imperative, that an answer must contain either a general denial, or specific denials of material matter in the complaint and *new* matter. It is not left optional whether to plead new matter constituting a defense or not, but it *must* be done.

So has it ever since been in the technique of procedure, that the general denial has had a definite and certain meaning, being the proper plea *only* when the whole gist of a *cause* is assailed, and under it defendant is at liberty to give only such evidence as tends to disprove the facts alleged by plaintiff. That parties may definitely know what they will be met with under such plea, it is essential that its meaning and the rule of evidence be definite and certain, as indeed it is, defendant being allowed to introduce such evidence as will disprove that which plaintiff must establish to make out his case. *Robinson* v. *Frost*, 14 Barb., 536; *McKring* v. *Bull*, 16 N. Y., 297.; *Weaver* v. *Borden*, 49 N. Y., 286; *Gabfin* v. *Railroad*, 101 N. Y., 348.

*New matter* and *defense* thereupon acquired equally as definite and certain meaning, as did the general denial. The new matter under the code in logic and by natural inference admits the essential facts to constitute plaintiff's cause of action, but in fact consists of facts not alleged therein, or those occurring subsequently which destroy the right of action and defeat recovery. What constitutes new matter, like the effect of a general denial, depends primarily upon the nature of the material allegations alleged in the petition.

The scope and effect of a general denial, and the evidence admissible thereunder as measured by the material allegations of the petition, also aids in determining what in the particular case constitutes new matter; that is, any fact which does not thus directly tend to disprove some one or more of the allegations of the petition not being admissible under the general denial, will of necessity become and constitute new matter and a defense. Such facts not being in denial of the facts alleged

by plaintiff, will of necessity be stated upon the natural and implied assumption, that so far as the defense is concerned, all material allegations *touching* the gist or essence of the *cause of action* are true. It thus confesses and avoids. *Pomeroy Code Rem.*, Section 549.

The proposition that a defense of new matter admits a real or an apparent right to be thus avoided springs from the nature of logical pleading (*Bliss Pl.*, Section 340). It expressly or by implication admits the averments of the petition, and alleges facts that destroy their effect or defeats them. *Cooper* v. *Smith*, 119 Ind., 313; *Jackson* v. *Steamboat, etc.*, 110 Iowa, 313; *Mauldin* v. *Ball*, 5 Mont., 96; *Merten* v. *Bank*, 5 Okla., 585; *Dunbery* v. *Fenton*, 80 Vt., 505 (130 Am. St., 1009); *Pomeroy Code Rem.*, Section 563.

I have thus with some particularity called attention to what every lawyer knows concerning the general denial for two reasons, viz: one to decide whether effect should be given the form of denial in this case; the other to point out the relative functions of the general denial and the defense of new matter so as to decide whether the matter pertaining to assumption of risk, and that relating to the alleged negligence of plaintiff as a proximate cause of his own injury should be stricken out.

As before stated the motion makes it incumbent on the court to decide whether the form of denial is good.

On the plain authority of the statute and the well settled judicial interpretation of the general denial, and the rules of evidence thereunder, upon principle and reason, in the interest of certainty in the administration of justice, with due deference to decisions to the contrary, we condemn the form of denial as improper and unwarranted under the code and order that the same be stricken from the answer.

If the form of denial contained in this pleading is to be regarded as improper, a query might arise in a case where contributory negligence or assumption of risk is properly negatived by plaintiff, evidence showing the same being admissible under a denial, whether the pleading of defendant should be in the form of a general or special denial.

Accurately speaking a general denial being proper only where the whole cause of plaintiff is attacked, it is seldom available, because nearly all, if not all cases, a defendant is bound to admit some fact or facts. That is, defendant may admit an injury but deny the causes thereof alleged.

An admission of certain facts might preclude the possibility of interposing a general denial. But evidence admissible under a general denial is likewise admissible under a specific denial.

Admission of an injury coupled with a form of general denial is logical and unobjectionable. The vice is in the plea of a form of general denial with a plea of an affirmative defense inconsistent therewith.

## Assumption of Risk.

The question is raised whether under the facts and circumstances of this case, the claim of assumption of risk may be made under a general denial, or whether it should be specially pleaded.

The plaintiff specifically states that he was working under the direct supervision of a foreman designated by the company to have charge of the work, whose instructions plaintiff was required to obey; that he was injured while he was working with his fellow workmen engaged in quarrying stone under the orders of the foreman, and while so engaged, and without any negligence on his (plaintiff's) part, the foreman himself, without any warning of any kind, negligently and carelessly rolled a large stone from a higher level in the quarry down upon the plaintiff. The claim which defendant makes is that plaintiff and the foreman were fellow-servants under the laws of South Carolina, instead of the latter being a superior servant.

The motion is to strike out the defense of *assumption of risk* of the employment pleaded in the third defense, *supra*. Defendant claims that plaintiff knew or by the exercise of ordinary care could have known exactly the condition of the stone, and if the same was improperly laid or rolled; that under the laws of South Carolina plaintiff assumed the risk.

The matter must be decided according to the South Carolina law.

The motion to strike out the plea of assumption of risk was sustained, because the precedents in Ohio have supported the view that facts showing that the risk complained of by the servant has not been assumed by him.

Ever since the decision in *Mad River & Lake R. R. Co.* v. *Barber*, 5 O. S., 541, in 1856, the rule of pleading in this state has been that in an action by a servant against his master, "in order to lay a sufficient foundation for a recovery * * * for an injury received by" the servant "while acting as such * * * (he) must aver or show in his petition, in addition to the allegation that he had not a knowledge of the insufficiency or defects which were the cause of the injury, that he had exercised due care and diligence in the use and examination or inspection of the cars, machinery, etc., * * * while the same were in his charge, and under his direction."

In subsequent decisions it is held that the servant must show that he did not remain in the master's employment with knowledge (*Snyder* v. *Railroad*, 60 O. S., 487), or with knowledge of habitual and continued neglect without protest. *Railroad* v. *Knittal*, 33 O. S., 468.

So, it is considered that if the servant is familiar with the work, he is presumed to appreciate the danger, or if in the exercise of due care he might have knowledge, he is chargeable with the same. *Pennsylvania Co.* v. *McCurdy*, 66 O. S., 118.

And in recent decisions the rule is clearly stated (and as a general formula) that the servant must aver want of knowledge of the neglect, or that having such knowledge he informed the master, and continued in the employment on a promise to remedy the danger. An averment that the injury occurred without fault on his part is expressly held not sufficient to cover the non-assumption of the risk. *Coal & Car Co.* v. *Norman*, 49 O. S., 598.

This doctrine is even more strongly reiterated in *Hesse* v. *R. R. Co.*, 58 O. S., 167, where by statute the showing of an injury from defective machinery constitutes a *prima facie* case against the defendant leaves untouched the law concerning the duty of plaintiff for his own safety, and it was, therefore, held that the

servant must allege that he had no knowledge of defects, or that, having such knowledge, he informed his superior, and continued in the service in reliance upon a promise to remedy the defects.

And ever since the *Mad river railroad case,* the practice has been that the servant in an action by him must negative contributory negligence on his part. The averment in such cases that plaintiff was without fault has been the uniform practice in accordance with the doctrine in *Mad River & C. R. R. Co.* v. *Barber,* 5 O. S., 541.

But the mere averment by a servant that he was *without fault,* while it may negative contributory negligence on his part, was properly held not sufficient to negative the assumption of risk by the two cases above cited, viz., *Coal & Car Co.* v. *Norman,* 49 O. S., 598; *Hesse* v. *R. R. Co.,* 58 O. S., 167.

Though these two decisions do not on their face profess to be based upon the distinction between contributory negligence and assumption of risk, their result or effect is very properly based upon the well recognized distinction between these two attitudes of a servant. But the courts do not always observe this distinction; failure to do so resulting in many illogical conclusions.

We now have to reconcile our conclusions with the decision in *Oakwood Street Railway Co.* v. *Marker,* 87 O. S., —— (November 12, 1912), reported since the opinion in the case at bar was announced. In this case the rule is adopted that in an action by an employe against his employer for injuries from the latter's negligence, it is not essential that the plaintiff shall allege that he did not have knowledge of such negligence, unless the allegation is required to repel an inference of knowledge which would naturally be raised from the facts alleged in the petition.

It is expressly stated that *Coal & Car Co.* v. *Norman, supra,* is distinguished. The court bases the distinction upon the ground that in both the *Norman* case and that of *Hesse* v. *Railroad Co.,* 58 O. S., 167, the averments therein disclosed that the plaintiff, the employe, was in a position to have knowledge of the danger, or to have been in a position to have knowledge of the sources of the danger, or to have peculiar opportunity to be informed respecting it.

The doctrine of *Oakwood Street Ry. Co.* v. *Marker, supra,* is in accord with the best reasoning of the authorities to the effect that where the facts stated are such as to reasonably justify an inference that plaintiff had, or ought to have had knowledge, of the danger, then it is incumbent on him to rebut the same by averring that he had no knowledge, or, if he had, that he continued in the employment in reliance upon a promise to repair the defect, or to remove the danger.

This clear and reasonable distinction had never before been pointed out in Ohio, the conclusion frequently being that in all cases by a servant against his master, it is essential for the former to negative the assumption of risk.

Reference has been made to the necessity of distinguishing between contributory negligence and assumption of risks.

The learned judge in *Oakwood Street Ry.* v. *Marker, supra,* suggests that in the ascertainment of what inferences should be drawn from the absence of an averment of knowledge, there is a helpful analogy found in the rules respecting contributory negligence which is always a matter of defense, except when plaintiff's facts start an inference that his own negligence contributed to the injury. He states that:

"This analogy seems to be clearly recognized in the cases upon the subject of assumed risk, and the plaintiff is required to allege his want of knowledge only when his own averments start the inference that he had knowledge of the source of danger."

The analogy referred to may be helpful, if we do not overlook the substantive distinction between contributory negligence and assumption of risk, and become confused to some disadvantage in our logic.

Contributory negligence prevents recovery because plaintiff's *negligent act* intervenes between that of defendant and the injury received, so that in such case the negligence is not the sole cause.

Contributory negligence has nothing to do with the contract, whereas in making the contract of employment both parties undertake certain implied obligations, among which is that of the servant to assume the ordinary risks incident to the employment,

which obligation of waiver continues throughout the employment. If at any time during employment the servant learns of perils, or they are obvious ones which by due care he ought to know, and he remains silent, his conduct after the cause of danger comes into existence combined with his contractual obligation constitutes a waiver.

The independent will of the servant in such case is not exercised by intervening as in contributory negligence, but instead his conduct is such that he voluntarily waives and releases the same by his contract of service. Willingness to enter on the dangers differs in principle from danger when in it. See instructive case, *Dowd* v. *Railway,* 170 N. Y., 459.

Only such perils and defects as are obvious and incident to the service, such as may be readily discovered by reasonable observation, are assumed by the employe. *Wabash, etc., Ry.* v. *Morgan,* 132 Ind., 430; *Cincinnati, etc., Ry.* v. *McMullen,* 117 Ind., 439; *Louisville, etc., R. W. Co.,* v. *Buck,* 116 Ind., 560; *Salem, etc., Co.* v. *Griffin,* 139 Ind., 141.

If an employe handles or uses the defective machinery and has opportunity to observe it, he is to be held accountable for a knowledge of its condition. *L. A. & C. Ry.* v. *Howell,* 147 Ind., 266; *Hesse* v. *Railroad Co.,* 58 O. S., 167.

The doctrine of many cases is that the servant is not bound to hunt or search for latent defects. *Louisville, etc.,* v. *Buck,* 116 Ind., 566; *Bradbury* v. *Goodwin,* 108 Ind., 286; *Hughes* v. *R. R. Co.,* 27 Minn., 137; *Railroad Co.* v. *Gildersleve,* 33 Minn., 133.

So the rule of pleading is that where the risk is an ordinary or an obvious one, and the statement of the facts showing the injury will clearly warrant the inference that plaintiff had, or ought, in the exercise of due care, to have knowledge of the peril or danger, he must in such case aver facts which will remove the case from the operation of the rule which charges the servant with the assumption of such risks. Otherwise the petition is demurrable. *Turner* v. *Indianapolis,* 96 Ind., 51; *O. & M. R. Co.* v. *Collarn,* 73 Ind., 261; 38 Am. Rep., 134; *Labatt, Master & S.,* Section 855; *Coal & Car Co.* v. *Norman,* 49 O. S.,

598; *Coal & Mining Co.* v. *Admr. of Clay,* 51 O. S., 542; *Coal Co.* v. *Estievenard,* 53 O. S., 431.

These are the correct rules and the reasoning thereof is apparent from their statement. There are many reported decisions on the subject, and there is conflict of opinion due to lack of analysis and common sense and reason as examination will disclose (26 Cyc., 1397). *Labatt on Master & Servant,* Sections 856 and 857, cites the cases *pro* and *con,* our examination of which disclosing an unsatisfactory condition as to reason and grounds upon which the conclusions are based. The following support the rule that assumption of risk is new matter and must be pleaded: *Magee* v. *R. R. Co.,* 78 Cal., 43; 12 Am. St., 69; *Preston* v. *R. R. Co.,* 84 Ga., 588; *C. & E. R. R.* v. *Hines,* 132 Ill., 161; 22 Am. St., 515; *Nicholous* v. *Railway Co.,* 90 Ia., 85; *Fisher* v. *Lead Co.,* 156 Mo., 479; *Dossett* v. *Mfg. Co.,* 131 N. C., 254; *Donahue* v. *R. R. Co.,* 32 S. C., 299; 17 Am. St., 854; *Faulkner* v. *Mining Co.,* 23 Utah, 437; *U. N. Ry.* v. *Tracy,* 66 Fed., 931; *Labatt on Master & Servant,* p. 679, note 5; also *Labatt,* Section 857, paragraph C.

In the following it is held necessary to negative the assumption of risk: *Hayden* v. *Mfg. Co.,* 29 Conn., 548; *Walsh* v. *R. R. Co.,* 34 Fla., 1; *Ind. R. Tr. Co.* v. *Foreman,* 162 Ind., 85 (102 Am. St., 185); *Buzzell* v. *Mfg. Co.,* 48 Me., 113 (77 Am. Dec., 212); *Jorgenson* v. *Smith,* 32 Minn., 79; *Railroad* v. *Barter,* 42 Neb., 793; *Dalton* v. *R. I. Co.,* 25 R. I., 574; *Whitelaw* v. *Memphis R. Co.,* 16 La., 391; *Henry* v. *R. R. Co.,* 65 Vt., 436; *Railroad Co.* v. *Jackson,* 85 Va., 489; 26 Cyc., 1394-95, 1397.

Some interest and pains have been taken in the subject on account of the confusion and conflict in an effort to clear it up, if possible, and because of a special interest in matters of practice.

This may, however, be all for naught as the doctrine of assumption of risk is now practically abolished by statute. Code, Section 6242.

Applying the rules set forth our conclusion is that the danger involved in the pleading was apparently an obvious one which, if the fellow-servant rule was involved, would require plaintiff

to negative any assumed risk.    Plaintiff does allege that he was without negligence, but the theory of the complaint is that the injury was caused by the act of a superior servant, while the defendant claims that they were fellow-servants.    It is said that the defense of *non superior* is always admissible under a general denial of complaints which allege the commission of injuries by means of defendant's servants, employes or agents.    *Pom. Code Rem.*, Section 551; *Wilson* v. *Ry. Co.*, 51 S. C., 79; *Kaminski* v. *Iron Works*, 167 Mo., 462.

Therefore, if defendant under general denial may show that the servant whose neglect is claimed to be the cause of the injury is a fellow-servant, and the danger is an obvious one, the general denial might permit the claim of assumption of risks to be made, where it is made the duty of plaintiff to negative knowledge of the danger.

Whether assumption of risk is admissible under general denial, or new matter to be pleaded, depends upon whether plaintiff must, under the particular circumstances, negative such assumption.

In cases where plaintiff must plead negatively his assumption of a peril or risk, defendant need not then plead it, but may show under a denial that plaintiff assumed the risk.

But where it is not essential for plaintiff to plead non-assumption of risk, defendant must plead the facts if he claims the risk was assumed by the servant.

The peril to which plaintiff was subjected according to his allegations was evidently the negligence of a servant of defendant, claimed by plaintiff to have been a superior servant, and whose act of alleged neglect was failure to give warning of the rolling of the stone.

If the servant was in fact a superior one instead of a fellow servant, his negligence is not the assumed risks, and in such case the defense would be improper.

If, on the other hand, such servant was a fellow-servant, this may be shown under a denial.    And in such case defendant may (under such denial) show that the risk was an ordinary one incident to the employment, was obvious, and should have been known to plaintiff.

The plaintiff in this case not only negatives his own negligence, but avers that he did not and could not have known of the neglect of the servant.

The gist of the neglect charged in the petition is failure to give warning of the rolling of the stone has no relation to the competency of the servant. The only ground upon which a master may be held for negligence of a fellow-servant is in hiring an incompetent one, or in retaining one after he has become incompetent.

If it should appear that the servant was a fellow-servant, plaintiff could not recover because the negligence of the fellow-servant is one of the ordinary risks assumed, and plaintiff has not founded his cause upon allegations of incompetency, So that in the absence of allegations directly attacking the competency of the servant as was done in the Oakwood Street Railway case, if it should turn out on trial that the servant of defendant whose neglect is the alleged cause of the injury, is a fellow-servant, his negligence would be one of the ordinary risks of employment, the assumption of which need not be pleaded.

For the reasons given it is apparent that the plea of assumption of risk is improperly pleaded and the motion to strike out the third defense is sustained.

Allegation of Negligent Acts of Plaintiff as a Direct and
        Proximate Cause of His Injuries. Effect of, and
                    How to be Treated.

The fourth defense states acts done by plaintiff which are alleged to have been negligently done by him "and said negligence of the plaintiff was a direct and proximate cause of any injuries which the plaintiff sustained."

This precise question arose recently in *Lantz* v. *The Hawks Hospital*, case No. 63460 in this court, the answer in which case contained the qualified general denial as in the present case. A motion to strike out the so-called defense on the ground that it pleaded nothing more than sole negligence which could be shown under a general denial, which we have heretofore held to be improper (*Latham* v. *Columbus Ry. & Light Company*, 8 N.P.

[N.S.], 185). Since rendering that decision, the Supreme Court in *Glass* v. *Heffron Co.*, 86 O. S., 18, state in the syllabus that an averment that the injury was caused by plaintiff's own fault and negligence, while it does not raise the issue of contributory negligence, still "it is more than a denial that the plaintiff was without fault. It is an averment that the plaintiff's own negligence was the *sole* cause of his injury."

Such a view is wholly at variance with the meaning and purpose of the general denial, because under such denial ever since its creation it has, without the slightest dissent, always been considered proper to prove that the injury was caused by the plaintiff's sole fault. The question before the court in the Glass case was not such as to make any statement of approval of such a form of pleading binding upon lower courts, and we do not follow it.

The decision in *Lantz* v. *Hospital* was made upon the basis that effect should be given to the qualified general denial as constituting a denial of the negligence charged against defendant. On that theory it was considered that as there appeared to be some doubt and uncertainty and equivocation in the plea of alleged negligence of plaintiff as a proximate cause of the injury, the doubt was resolved against the plea as being nothing more than a plea of possible sole negligence on the part of defendant. In the amended answer in the *Lantz* v. *Hospital* case it stated the alleged negligent acts of plaintiff as *a* proximate cause, instead of *the* proximate cause, the amended answer being stricken from the files.

In the consideration of this case, however, which has occupied much time I have concluded that the original vice is in giving encouragement to an authorized and slovenly form of denial.

That there is an apparent purpose to evade the use of the term "contributory negligence" because of the implied admission of negligence on the part of the defendant, is evidenced by the unanimity in form of pleading in this class of cases.

Is the form of plea in the fourth defense in this case a sufficient plea of the defense of contributory negligence, if the so-called qualified general denial is not given effect as a denial of the

negligence of defendant alleged by plaintiff? In *Clark* v. *Dillon,* 97 N. Y., 371, the court held that notwithstanding the plea of contributory negligence and the qualified form of general denial in the same answer, such form of denial could not be held to amount to a denial of the negligence of the defendant in view of the plea of contributory negligence.

Under such ruling, and especially by eliminating the qualified general denial, we may look upon the fourth defense with more favor.

To plead certain negligent acts on the part of the plaintiff as *a* proximate cause of the injury complained of by him may give rise to doubt and uncertainty, but not so much as when the defendant is in the attitude of denying his own negligence of the qualified denial.

The form of allegation is designedly an innovation upon the ordinary plea of contributory negligence. No substantial reason can be given for it except to avoid the effect of the implied admission if possible. If, as claimed by those using it, it is a plea of contributory negligence, nothing is gained by the innovation, for the court must cover the matter in its charge to the jury. Indeed no apology can be offered for its pecularity, its vagueness and uncertainty, or for the tenacity with which it is insisted upon. It is not in accord with the ordinary plea of contributory negligence.

Pleaded as it has been, accompanied with an attempt at denial of negligence on the part of defendant, it is in clear defiance of the familiar rule expressed in *Cincinnati Traction Co.* v. *Forrest,* 73 O. S., 1, 5, where it is held in accordance with the long settled doctrine that:

"Contributory negligence on the part of plaintiff implies negligence on the part of the other party; it can not exist without. It is the want of ordinary care by a person injured by the negligence of another, concurring with such negligence, and thus contributing to the injury as a proximate cause.

"The plaintiff's negligence may be the sole proximate cause of the injury, but it is not in such case contributory negligence, because to contribute is to have a share in some act, or effect, to lend assistance or aid. Hence if no act occurs to be aided there can be no act which is contributory."

Nor is it consistent with *Cincinnati Traction Co.* v. *Stephens,* 75 O. S., 171, wherein it is held that:

"The defense of contributory negligence is inconsistent with a defense entirely upon the ground that the defendant was guilty of no negligence whatever; because the very definition of contributory negligence implies that there was some negligence on the part of the defendant."

It has been the uniform rule adopted by the Supreme Court of the United States, and by a majority of the states that the burden is on the defendant when plaintiff's case raises no inference to show that plaintiff's negligence contributed to his injury. *Inland, etc., Castings Co.* v. *Falson,* 139 U. S., 551; *Washington, etc., R. R.* v. *Harmon,* 147 U. S., 571.

"The defense of contributory negligence is in the nature of confession and avoidance. It standing alone, necessarily admits that plaintiff was injured by the negligence of defendant. Otherwise it is irrelevant." *Buechner* v. *City of New Orleans,* 112 La., 599; 104 Am. St., 455.

"As the plaintiff is required to allege, with legal certainty, injury from the negligence of the defendant, there is no reason why the defendant should not be required to allege the *concurring* negligence of the plaintiff" with legal certainty. *Id.*

"When contributory negligence is pleaded as a defense, it must be alleged in the same manner that negligence must be alleged as a ground for recovery—the act or omission must be stated, must be characterized as negligent, and must be shown to have contributed to the injury complained of." *Phillips Pl.,* Section 503.

Contributory negligence which will defeat recovery must bear such casual connection between that of defendant and of plaintiff as that the negligence of the latter contributed as a proximate cause.

Pollock states that "it seems dangerously ambiguous to use proximate in a specific sense without further or otherwise marking the difference. If we said decisive we should at any rate avoid the danger. The strict analysis of the proximate or immediate use of the event, the inquiry who could best have prevented the mischief by the exercise of due care, is relevant only

where the defendant suffered by his own negligence.'' *Pollock,
Torts,* 455, 461.

The two essential elements are a want of ordinary care on the
part of the plaintiff, and a casual connection between that and
the injury complained of. *Kinkead, Torts,* Section 535.

Testing the allegation in the light of these well known princi-
ples what is the result?

It was the intent of the pleader to claim no negligence on the
part of defendant. But this may be destroyed by not giving
effect to the denial, though it may still operate on the construc-
tion of the fourth defense.

Proximate cause means one next immediately preceding or
following. It may be before or after the neglect of the defendant.
The defense states that plaintiff knew or ought to have known the
dangers, and that he was negligent in the particulars mentioned
which was *a* direct and proximate cause of any injuries sus-
tained by him.

*A* proximate cause means ''*one* or *any* but less emphatically.''

*The* proximate means one more limited or restricted.

So far as concerns the negligent acts charged against defend-
ant they might be a proximate cause with any person other than
defendant.

A plea of contributory negligence might be sufficient without
using the term ''contributory negligence'' if it appears that
plaintiff might have avoided the consequences of the defendant's
negligence. Unless such a plea does not show definitely that the
alleged negligence of plaintiff is pleaded as a contributory proxi-
mate cause with that complained of by plaintiff, it will amount
to nothing more than what may be shown under a general denial.

The order with reference to the fourth defense is that the mo-
tion to strike it out will be overruled, but the court of its own
motion orders that it be made definite and certain by stating
whether the alleged negligent acts of plaintiff set forth in the
fourth defense were a contributory proximate cause with the
negligence complained of and charged in the petition against
defendant.

A remedy should not be taken away unless one be given.
Cases undoubtedly arise where it is difficult to foretell whether

the defendant was guilty of negligence charged so that there may be just hesitation to plead contributory negligence which implies an admission. But ever since the Statute of 4 Anne Ch., 16, which permitted the defendant to plead as many defenses as he has, it has been proper when the circumstances warrant, to make denial and to plead contributory negligence in the alternative.